UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 19-54-HRW-CJS

DOMINIQUE RASHAN DUDLEY                                                   PLAINTIFF

v.                           **REPORT AND RECOMMENDATION**

JAMES GREEN, *et al.*                                                     DEFENDANTS

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Dominique Rashan Dudley initiated this action with the filing of his *pro se* Civil Rights Complaint Under 42 U.S.C. § 1983. (*See* R. 1). After initial screening by the presiding District Judge, this matter was referred to the undersigned "to conduct all further pretrial proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions." (*See* R. 22 at Page ID 217). The parties have each filed Motions for Summary Judgment. (R. 53; R. 55). For the following reasons, it will be recommended that Defendant Jeffrey Smith's Motion for Summary Judgment (R. 53) be **granted** and that Dudley's Motion for Summary Judgment (R. 55) be **denied**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Dudley's Complaint was filed in June 2019.[1] (*See* R. 1). The salient facts, as alleged by Dudley in his Complaint, were previously described by the presiding District Judge as follows:

> Dudley's complaint sets forth a lengthy narrative regarding an incident that began on December 3, 2018, after Dudley confronted Correctional Officer Kenneth

---

[1] In March 2019, Dudley filed a previous action based on the same facts. *See Dudley v. Green*, 0:19-CV-30-HRW, at R. 1 (E.D. Ky. March 14, 2019). Upon preliminary review, the presiding District Judge dismissed Dudley's Complaint in that case as failing to state a claim upon which relief could be granted. *See id.* at R. 9 at Page ID 52 (observing that Plaintiff had sued all Defendants in their official capacities only).

Burnett about Burnett's entry into Dudley's cell while neither Dudley nor his cell mate were present, allegedly in violation of the prison's cell search policy. Dudley states that, after he complained to various prison officials regarding Burnett's alleged violation of the policy, Sergeant Jeffrey Smith entered his wing, placed Dudley in handcuffs, and took him to a holding cell. Dudley claims that, while he was in the holding cell, Smith stated that Dudley shouldn't have threatened Burnett and that he would be going to the hole. During his time in this holding cell, Dudley alleges that he was sprayed with mace and then repeatedly tased by Smith. He further claims that, after Dudley became angry and non-cooperative as a result of being maced and tased - his own allegations state that he became argumentative, raised his voice, and pulled the hooks out of his arms and threw them out of an opening of a cage - he was placed in a Restrictive Housing Unit ("RHU").

Dudley alleges that Shift Supervisor Matthew Lindon issued and signed a detention order stating that Dudley made threatening statements towards a staff member, as well as a disciplinary write-up filed by Smith. Dudley argues that, because the disciplinary write-up did not indicate that Dudley had been maced and tased, it was a false and incorrect report. Although it is not entirely clear from his allegations, Dudley also appears to allege that a write-up filed by Burnett was later altered to indicate that Burnett was conducting a count at the time that he searched Dudley's cell.

Dudley later went on a hunger strike and claims that Deputy Warden of Security Terry Wallace said that the institution had the legal right "to suit up in riot gear and forcefully put a feeding tube down [Dudley's] throat." He then alleges that, after he was released back to the general population, Burnett approached him to ask if they were okay and denied that he had ever reported that Dudley had threatened him.

Based on these allegations, Dudley alleges claims for violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment against Burnett, Smith, Lindon, Wallace, and Warden James Green. He also states that Smith's use of excessive force "may also be assault and battery." As relief, he seeks punitive damages in the amount of $3.7 million.

(*See* R. 9 at Page ID 81-83).

Upon preliminary review, the presiding District Judge dismissed without prejudice Dudley's claims against Defendants Warden James Green, Deputy Warden Terry Wallace, Captain Lindon, and Corrections Officer Kenneth Burnett, and dismissed those Defendants as parties. (*See id.* at Page ID 90). Thus, the only claim that survived initial screening was Dudley's excessive force claim against Sgt. Smith in his individual capacity. (*See id.*).

After Sgt. Smith filed his Answer (R. 21), the Court entered a Scheduling Order that set deadlines for the completion of discovery, for the filing of motions to join parties or to amend pleadings, and for dispositive motions. (*See* R. 24). The parties proceeded to engage in discovery, and throughout the course of this litigation, they each filed various motions for relief. (*See, e.g.*, R. 63 (Memorandum Order addressing numerous motions)). Presently, only the parties' Motions for Summary Judgment remain pending for resolution by the Court. (*See* R. 65 at Page ID 711 ("As noted in the September 30 Memorandum Order, the current posture of Dudley's case is that each side's Motion for Summary Judgment has been submitted for consideration and issuance of a recommended disposition.")).

Before turning to the merits of each party's dispositive motion, the Court will briefly address four ancillary issues Dudley presents in his briefing. First, Dudley argues that Sgt. Smith's Motion for Summary Judgment should be denied as untimely. (*See* R. 57 at Page ID 609). However, the Court previously addressed this *exact* argument by Plaintiff in its September 30 Memorandum Order:

> Dudley takes issue with the timing of Defendant's Motion for Summary Judgment filing, arguing it should be denied because it was filed beyond the deadline for filing dispositive motions. Yet, Dudley has himself filed his own Motion for Summary Judgment at virtually the same time Defendant filed his Motion and so Dudley has also filed beyond the deadline. Neither side has moved for an extension of the dispositive motion deadline; however, because each side has recently filed a dispositive motion and had an opportunity to respond to the other's dispositive motion, the parties' late filing of their Motions for Summary Judgment will be permitted by the Court.

(*See* R. 63 at Page ID 701-02). Thus, Dudley's challenge to the timeliness of Sgt. Smith's Motion for Summary Judgment is not well taken, and the Court will consider each party's substantive arguments contained within their briefing.

3

Second, Dudley alleges that Sgt. Smith and other individuals have committed perjury through their filings, including affidavits, that appear in the record. (*See* R. 57 at Page ID 615; *see also* R. 55 at Page ID 554). In this vein, Dudley argues that these materials were submitted in "bad faith" under Federal Rule of Civil Procedure 56(h), which provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h).

Upon review, the Court is not satisfied that the materials by Sgt. Smith or anyone else were submitted in bad faith. *See id.*; *see also TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.,* No. 1:11-CV-85, 2012 WL 2576367, at *6 (N.D. Ohio July 3, 2012) ("Courts have found 'bad faith' in the context of Rule 56 only 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case.'") (quoting *Sutton v. U.S. Small Bus. Adm.,* 92 F. App'x 112, 118 (6th Cir. 2003)). Under Rule 56(h)'s standard, Dudley's "perjury" arguments are not well taken. Therefore, the Court will consider the substance of those affidavits to the extent they bear on any material issues in this case.

Third, Dudley asks the Court to "strike" Sgt. Smith's Motion for Summary Judgment from the record. (*See* R. 57 at Page ID 632). However, the Federal Rules of Civil Procedure only permit the striking of pleadings. *See* Fed. R. Civ. P. 12(f) ("The court may strike from *a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.") (emphasis added); *see also Carney v. Procter & Gamble Mfg. Co.*, No. 04-1253 T/AN, 2006 WL 8436360, at *1 (W.D. Tenn. Apr. 28, 2006) ("Thus, the plain language of the Federal Rules of Civil Procedure does not provide for the striking of motions or of exhibits attached to motions or of

4

anything else that does not fall within the categories of pleadings set out in Fed. R. Civ. P. 7(a)."). Because Dudley seeks to strike a filing that is not a pleading, his request does not comply with the Federal Rules of Civil Procedure and will be denied.

Fourth, Dudley spends much of his briefing arguing about facts that do not directly relate to his excessive force claim against Sgt. Smith, and he also submits that video evidence exists that would support his claims, but that he never had access to it. (*See, e.g.*, R. 57 at Page ID 613 (referencing "the institutional cameras that are being held from the Plaintiff")). As explained above, only Dudley's excessive force claim against Sgt. Smith remains pending before the Court. Thus, the Court will not wade into the weeds of Dudley's factual arguments that do not relate to his remaining Eighth Amendment claim. *See* Fed. R. Civ. P. 56(c)(3). Further, the Court previously addressed Dudley's requests for video evidence and found that those requests were untimely. (*See* R. 63 at Page 699-700). The Court will not revisit those conclusions here.

With these secondary issues out of the way, the Court now turns to the merits of each party's Motion for Summary Judgment. (*See* R. 53: R. 55). For the reasons explained below, the Court will recommend that Sgt. Smith's Motion for Summary Judgment (R. 53) be **granted** and that Dudley's Motion for Summary Judgment (R. 55) be **denied**.

## II.     STANDARD OF REVIEW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. That Rule provides, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, once the moving party has met its burden, the burden shifts to the non-moving party to present specific facts showing there is a genuine issue

5

of material fact. *Arendale v. City of Memphis*, 519 F.3d 587, 593-94 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When ruling on motions for summary judgment, courts accept the nonmovant's evidence as true and draw all reasonable inferences in favor of the nonmovant. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment will not be granted if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, to survive summary judgment, the nonmoving party cannot rely on "conjecture or conclusory accusations" but "must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale*, 519 F.3d at 605 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Conclusory assertions that are supported only by the asserter's own opinions cannot withstand a motion for summary judgment. *Id.*

### III.    ANALYSIS

#### A.    Dudley's Eighth Amendment Claim

Dudley's sole remaining claim is his excessive force claim against Sgt. Smith. (*See* R. 9 at Page ID 90). This claim is brought pursuant to the Eighth Amendment, which states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Importantly, the Eighth Amendment prohibits prison officials from using excessive force against imprisoned people. *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-40 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 4-9 (1992); *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986).

However, prison officials have a need to maintain prison security and discipline. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (explaining that courts grant prison officials "wide-

ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). This means that inmates may be subjected to physical contact that would be actionable as assault under common law. *Id.* Relatedly, "not every push or shove, even if it appears to be unnecessary, violates a prisoner's constitutional rights." *Hampton v. Alexander*, 76 F.3d 378, at *1 (6th Cir. 1996) (unpublished table decision). In sum, prison officials violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted).

An Eighth Amendment claim alleging excessive force by a prison official has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). Objectively, the pain inflicted by the prison official must be "sufficiently serious" to offend "contemporary standards of decency." *Williams*, 631 F.3d at 383. Relatedly, the nature and extent of a prisoner's injury may be indicative of the amount of force applied. *Hudson*, 503 U.S. at 9; *see also Cordell*, 759 F.3d at 580-81.

The subjective component, on the other hand, looks to the state of mind of the prison official. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). The question "ultimately turns on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Whitley*, 475 U.S. at 320-21). To evaluate the prison official's state of mind, a district court must consider the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7.

Dudley's excessive force claim against Sgt. Smith is based on the December 3, 2018 incident, during which Dudley was maced twice and tased twice by Sgt. Smith while in a holding cell at the Eastern Kentucky Correctional Facility. (*See, e.g.*, R. 53-1 at Page ID 518-19). Dudley maintains that Sgt. Smith's use of force was excessive and argues that he "did not become aggressive until the defendant provoke[d] him." (*See* R. 57 at Page ID 621). Conversely, Sgt. Smith maintains that the use of force was necessary because Dudley continued to be noncompliant.[2] (*See* R. 53-1 at Page ID 518-19 (discussing Dudley's actions)).

Dudley primarily relies on an Internal Affairs Investigation memorandum as support for his excessive force claim. (*See* R. 57-3). In that memorandum, Internal Affairs reviewed the incident involving Dudley and Sgt. Smith and found that "Sgt. Smith did not follow CPP 9.1 on Level Four Force – Use of Physical Force other tha[n] Restraint (KRS 503.110)." (*See id.* at Page ID 641). The report also explained that Sgt. Smith should have let Dudley calm down and should have received proper authorization before using his taser, and it stated that Sgt. Smith "was demoted back to a Correctional Officer and did not complete his probationary period for the Use of Force on Inmate Dominique Dudley." (*See id.*).

In response to Dudley's reliance on the Internal Affairs Investigation, Sgt. Smith maintains, in part, that Dudley "has not shown that the CPP establishes a constitutional right to be free from

---

[2] In his Motion for Summary Judgment, Sgt. Smith presents the following scenario for why he attempted to mace Dudley twice: "Defendant attempted to deploy OC spray, but the button malfunctioned and no OC was discharged. After Defendant's OC spray can malfunctioned, he used the spray can from Sgt. Williams, but the OC barely sprayed out and did not make good contact." (*See* R. 53-1 at Page ID 518) (citation omitted). Similarly, Sgt. Smith maintains he had to deploy his taser twice because both prongs did not connect during either attempt. (*See id.* at Page ID 519). Sgt. Smith also highlights Dudley's conduct, including that, before any mace was deployed, Dudley refused to cuff up, and was told the spray would be used if he did not comply, to which he responded, "Fuck all that," and that, after the first taser did not connect, Dudley again refused to cuff up and told Sgt. Smith, "You got to get me." (*See id.* at Page ID 518, 524). Dudley does not dispute this version of events. (*See, e.g.*, R. 57 at Page ID 626 (citing R. 57-3)).

8

the application of force via a taser."[3]  (*See* R. 61 at Page ID 689).  Upon review, the Court agrees with Sgt. Smith.  Indeed, even when the record is viewed in the light most favorable to him, Dudley has not presented sufficient evidence to reach a jury on his excessive force claim.

First, concerning the objective prong, the record does not reveal extensive injuries were suffered by Dudley.  Instead, the record shows that, after being maced and tased, he was given a shower and a nurse cleaned his minor injuries from the incident, treated them with antibiotic cream, and covered them.  (*See* R. 53-1 at Page ID 527).  Such facts do not satisfy the objective inquiry, which requires the pain inflicted by the prison official to be "sufficiently serious" to offend "contemporary standards of decency."  *Williams*, 631 F.3d at 383.

Second, concerning the subjective prong, Dudley has not presented sufficient evidence to demonstrate that Sgt. Smith applied force "maliciously and sadistically for the very purpose of causing harm.'"  *Moore*, 2 F.3d at 697 (quoting *Whitley*, 475 U.S. at 320-21).  Here, the Court observes that Dudley, by his own admission, was angry and aggressive toward the correctional officers, and that Sgt. Smith believed Dudley was a threat to himself and state property.  *See Hudson*, 503 U.S. at 7 (explaining that, when evaluating a prison official's state of mind, a court must consider the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officers, and any efforts made to temper the severity of the forceful response).

Further, it is true that the Internal Affairs Investigation found Sgt. Smith should have behaved differently.  However, the Court is mindful of the reality that "prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,"

---

[3] Sgt. Smith couches this argument in terms of a qualified immunity analysis. (*See* R. 61 at Page ID 689). However, because the first prong of that analysis requires the Court to consider whether a plaintiff has established the violation of a constitutional right, the Court considers the argument here.

9

and thus courts "must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs*, 315 F.3d at 557 (internal quotations omitted). Against such a backdrop, this factor also does not demonstrate that Dudley has presented sufficient evidence to satisfy the subjective prong of the inquiry. *See Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992) (granting summary judgment for an officer who subdued a noncompliant inmate with a stun gun and straight jacket).

Without sufficient evidence on the objective and subjective prongs of his Eighth Amendment claim, Dudley has not shown that he is entitled to relief. Therefore, the Court will recommend that Sgt. Smith's Motion for Summary Judgment (R. 53) be granted, and that Dudley's (R. 55) be denied.

    **B.**    **Qualified Immunity**

Next, the Court will briefly address Sgt. Smith's defense of qualified immunity. (*See* R. 53-1 at Page ID 530). Under Supreme Court precedent, "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted).

As discussed above, Dudley has not put forward evidence to show that a genuine dispute of material fact exists regarding whether Sgt. Smith violated his constitutional rights. Indeed, Dudley has not shown Sgt. Smith should not be granted summary judgment on Dudley's constitutional claim. Thus, Dudley fails to overcome the first prong of the qualified immunity analysis: that the Defendant violated his constitutional rights. *See Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006) (explaining that when the defense of qualified immunity is raised,

"the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity").

Because Plaintiff has not shown any violation of his Eighth Amendment rights by Sgt. Smith, Sgt. Smith is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may address the prongs of the qualified immunity analysis in either order); *see also Johnson v. Slone*, No. 7:16-274-KKC, 2018 WL 1402376, at *5 (E.D. Ky. Mar. 20, 2018) ("The Court has concluded above that no Eighth Amendment violations occurred. Thus, Defendants are entitled to qualified immunity.").

### III. CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, it is hereby **RECOMMENDED** as follows:

1) Defendant Jeffrey Smith's Motion for Summary Judgment (R. 53) be **granted**; and

2) Plaintiff Dominique Rashan Dudley's Motion for Summary Judgment (R. 55) be **denied**.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 155 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Signed this 1st day of March, 2022.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\civil ashland\2019\19-54-HRW R&R re cross MSJs.docx